WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ELIZABETH MAYEDA-WILLIAMS, )
                                              Plaintiff, )
vs. )
COMMISSIONER OF SOCIAL SECURITY )
ADMINISTRATION, )
                                              Defendant. )      No. 1:18-cv-0009-HRH

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff Elizabeth Mayeda-Williams has timely filed her opening brief,[1] to which defendant, the Commissioner of the Social Security Administration, has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

On November 26, 2012, plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that she became disabled on October 15,

---

[1]Docket No. 14.

[2]Docket No. 17.

-1-

2012.  Plaintiff alleged that she was disabled due to lupus, rheumatoid arthritis, polyarphralgia, anxiety, and Chiara malformation.  Plaintiff's applications were denied initially.  Plaintiff requested a hearing.  After an administrative hearing on March 15, 2015, an administrative law judge (ALJ) denied plaintiff's applications.  Plaintiff sought review of the ALJ's unfavorable decision.  On June 7, 2016, the Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ for further consideration.  After another administrative hearing on March 15, 2017, the ALJ again denied plaintiff's applications.  Plaintiff again sought review of the ALJ's unfavorable decision.  On June 8, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 27, 2017 decision the final decision of the Commissioner.  On June 22, 2018, plaintiff commenced this action in which she asks the court to review the Commissioner's final decision.

## General Background

Plaintiff was born on May 14, 1965.  She was 49 years old at the time of the first administrative hearing.  Plaintiff has a college education.  Plaintiff's past relevant work includes work as a computer lab assistant; an accounting clerk, tech, manager, and supervisor; a property finance analyst; a grant manager; a payroll accountant; a receiving clerk; a building monitor; a receptionist; and an office manager.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the

Social Security Act through December 31, 2019."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "engaged in substantial gainful activity during the following periods: 4th quarter of 2013 through May 28, 2014"[5] but that "there has been a continuous 12-month period[] during which the claimant did not engage in substantial

---

[3]Admin. Rec. at 37.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Plaintiff worked full-time as an office manager from October 2013 through May 2014. Admin. Rec. at 535.

gainful activity."[6]

At step two, the ALJ found that plaintiff had "the following severe impairments: Sjogren's syndrome; rheumatic arthritis (RA); osteoarthritis of the shoulders; status-post cerebral vascular accident. . . ."[7] The ALJ found plaintiff's anemia, bilateral hearing loss, bilateral carpal tunnel, degenerative joint disease of the patellofemoral compartment, anxiety, adjustment disorder, and panic disorder non-severe.[8]

At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. . . ."[9] The ALJ considered Listings 1.02 (major dysfunction of a joint, due to any cause), 14.09 (inflammatory arthritis), 14.10 (Sjögren's syndrome), and 11.04 (vascular insult to the brain).[10]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she needs a

---

[6]Admin. Rec. at 37-38.

[7]Admin. Rec. at 38.

[8]Admin. Rec. at 38-39.

[9]Admin. Rec. at 40.

[10]Admin. Rec. at 40.

sit/stand option allowing to alternate sitting or standing positions at one hour intervals throughout the day. Further, she can frequently climb ramps or stairs, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds. There should be no exposure to unprotected heights.[11]

The ALJ gave great weight to most of Dr. Lebeau's opinion but only gave little weight to his opinion that plaintiff would need additional breaks during the day because of her Sjogren's.[12] The ALJ gave great weight to most of Dr. Brown's opinion but little weight to his opinion that plaintiff could occasionally climb ladders/ropes/scaffolds and should avoid concentrated exposure to extreme cold and hazards.[13] The ALJ gave little weight to Dr. Hambleton's opinions.[14] The ALJ also gave little weight to Dr. Anderson's opinions.[15] The

---

[11]Admin. Rec. at 41.

[12]Admin. Rec. at 44. Dr. Lebeau's opinion is discussed below in detail.

[13]Admin. Rec. at 44-45. On February 8, 2013, Roy Brown, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for 6 hours; could sit for 6 hours; was unlimited as to pushing/pulling; could frequently climb ramps/stairs; could occasionally climb ladders/ropes/scaffolds; could frequently balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold, vibrations, and hazards. Admin. Rec. at 166-167.

[14]Admin. Rec. at 45. On November 11, 2012, Dr. Hambleton opined that plaintiff was not capable of working full-time due to her RA, polyarthralgia, and anxiety. Admin. Rec. at 1133. On April 9, 2013, Dr. Hambleton opined that plaintiff "is disabled and unable to work due to her symptoms." Admin. Rec. at 1135. On June 13, 2013, Dr. Hambleton noted that plaintiff "has true disease that is very difficult to control and her ability to work is quite compromised because of her disease." Admin. Rec. at 917.

[15]Admin. Rec. at 45. On April 7, 2015, Dr. Anderson opined that plaintiff was unable to work full-time because of "her progressive decline, even with treatment." Admin. Rec. at 1144. On May 6, 2015, Dr. Anderson noted

(continued...)

ALJ gave no weight to Dr. Farr's opinion.[16] The ALJ also gave no weight to Dr. Rosales' opinion.[17] The ALJ gave no weight to Kay Smith's opinion.[18] The ALJ also gave no weight

---

[15](...continued)

> [f]or the record, this 49yo woman has had significant challenges with maintaining employment due to her frequent requirements for medical visits. This has impacted her life in a way that has made it difficult to maintain her finances. I made it clear to the patient that I do not do formal Disability exams, so cannot determine her level of disability at this time. I do, however, expect her chronic problems to continue to deteriorate, and she will likely require disability assistance at some point.

Admin. Rec. at 1322.

[16]Admin. Rec. at 46. On April 16, 2013, Dr. Farr indicated that plaintiff "will require long term lubrication of her eyes." Admin. Rec. at 1139.

[17]Admin. Rec. at 46. On March 14, 2017, Dr. Rosales wrote that

> [a]t this time the working diagnosis for Ms. Mayeda is Myocarditis (unspecified) and it is supported by objective findings of pericardial effusion in MRI, focal wall motion abnormality in dobutamine stress echocardiogram and positive troponins during stress test with a normal coronary artery disease. At this moment, Ms. Mayeda has failed medical therapy and the invasive testing has not given a definitive diagnosis. She continues to report symptoms consistent with angina of effort ACC class 2, which limits her ability to work.

Admin. Rec. at 3029.

[18]Admin. Rec. at 46. On July 15, 2015, Kay Smith, a vocational rehabilitation counselor wrote that

> DVR will forward a letter indicating the circumstances for closure of Ms. Mayeda's DVR case. Her DVR services began 06/23/2014, and her case was closed on 05/09/2015. Ms.

(continued...)

to Larina Santos' opinion.[19]

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as an accounting clerk, an accounting technician, a payroll accountant, an accounting specialist, an accounting manager, and an accounting supervisor."[20]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from October 15, 2012, through the date of this decision. . . ."[21]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying

---

[18](...continued)
> Mayeda received a note from her primary treating physician, 'not ready for work,' which makes her unable to participate in the VR program. After discussion, she requested her case be closed due to deteriorating medical health, i.e., needs blood/iron infusions 2x/week, absent stamina, i.e., sleepy rest of the day after infusions. Ms. Mayeda indicated that if her medical situation does not improve, she will need blood transfusions.

Admin. Rec. at 1353.

[19]Admin. Rec. at 46. On July 15, 2015, Larina Santos, MSN, opined that plaintiff could stand for 45 minutes; sit for 45 minutes; walk for 100 yards; rarely reach above shoulders, down to waist, or towards the floor; frequently handle objects carefully; could lift less than 5 pounds; and cannot bend or squat. Admin. Rec. at 1355-1357.

[20]Admin. Rec. at 46.

[21]Admin. Rec. at 47.

benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred because he failed to account for the fact that she would miss more than two days of work each month because of her dental visits. Plaintiff testified that she sees the dental hygienist once a week for about an hour and the dentist 3-4 times per month for anywhere between 30 minutes and 2 hours.[22] Plaintiff argues that her dental appointments, which are necessary treatment for her Sjogren's, would cause her to miss more than two days of work per month. The vocational expert testified that two

---

[22]Admin. Rec. at 97.

or more absences per month would preclude competitive employment.[23]

Plaintiff's dental appointments would not necessarily cause her to miss more than two days of work per month. There is no evidence in the record that plaintiff's dental provider was only available for appointments during the workday. In her reply brief, plaintiff contends that her dental visits are in Anchorage (she lives in Juneau), but the record does not bear this out. Plaintiff testified that she has been making 2-3 trips to Anchorage per month since 2014 for her various medical issues, not just to see the dentist.[24] And, while the record does show that plaintiff makes relatively frequent trips to Anchorage for medical appointments, which might preclude her from maintaining full-time employment, it does not appear that she was going to Anchorage 2-3 times per month. That said, even if she were only going once a month, it is possible that such a trip along with her other medical appointments would preclude full-time employment.

"The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Garcia v. Comm'r of Social Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting

---

[23]Admin. Rec. at 123.

[24]Admin. Rec. at 107-108.

Smolen v. Chater, 80 F.3d at 1273, 1288 (9th Cir. 1996)). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id.

The evidence on the issue of how much work plaintiff would miss each month due to necessary medical and dentist appointments is ambiguous. The ALJ should have developed the record as to this issue. The failure to do so was error

Plaintiff next argues that the ALJ erred in rejecting a portion of Dr. Lebeau's opinion. Dr. Lebeau opined that plaintiff could lift/carry 10 pounds continuously; lift/carry up 20 pounds frequently; could sit for 7 hours a day, up to 2 hours at a time; could stand for 3 hours a day, up to one hour at a time; could walk for 30 minutes; had no limits in terms of using her hands and feet; could climb stairs and ramps frequently; could never climb scaffolds and ladders; could balance continuously; could stoop, kneel, crouch, and crawl frequently; could not be around unprotected heights; and had no limitations as to moving mechanical parts, moving machinery, dust, odors, fumes, and extreme cold and heat.[25] Dr. Lebeau also testified that plaintiff would need additional breaks every day to deal with the symptoms of her Sjogren's, but he did not give a number of additional breaks that would be required.[26] Dr. Lebeau stated "that what [plaintiff's] describing" in terms of her Sjogren's syndrome "is

---

[25]Admin. Rec. at 90-91.

[26]Admin. Rec. at 95.

classic.  There's nothing [to] challenge[] credibility. . . .  It's a . . . nasty disease and yet it doesn't kill you; . . . you have to try to . . . live with this[.]"[27]  He also testified that "this is a lady who's going to have to be taking wetting agents for her . . . tongue, mouth, and for her eyes frequently.  So she's going to be, like, trying to work and . . . I'm sure that she is using these things probably at least every hour."[28]

The ALJ gave great weight to most of Dr. Lebeau's opinion but gave little weight to the portion of his opinion relating to plaintiff needing additional breaks.[29]  Plaintiff argues that the ALJ erred in rejecting Dr. Lebeau's opinion that she would need additional breaks.  The ALJ rejected this portion of Dr. Lebeau's opinion because it was inconsistent with plaintiff's daily activities and because Dr. Lebeau "did not opine any specific number of breaks, but rather indicated generally that Sjogren's requires maintenance during the day."[30]  "As elements of [Dr. Lebeau's] opinion conflict with opinions of other medical experts, the ALJ was only required to give a specific and legitimate reason for rejecting h[is] medical opinion."  Norris v. Colvin, 160 F. Supp. 3d 1251, 1270 (E.D. Wash. 2016) (internal quotations omitted).

Defendant argues that the first reason given by the ALJ was a legitimate reason.  The

---

[27]Admin. Rec. at 95.

[28]Admin. Rec. at 92.

[29]Admin. Rec. at 44.

[30]Admin. Rec. at 44.

ALJ stated that plaintiff remained "quite active" and pointed to evidence that she drove disabled friends and family around; that she was caring for 14 of her grandchildren in her home; that less than one year after her alleged onset date she was applying for full time jobs and actually began working full-time in October 2013; that she assisted a friend with medical travel including pushing a wheelchair and carrying luggage; and that as late as 2016, she was spending 13-hour days caring for 3 of her grandchildren.[31] Defendant argues that activity at this level is inconsistent with Dr. Lebeau's testimony that plaintiff would need additional breaks during the day.

The court disagrees. As the Ninth Circuit has recognized, "'[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer.'" Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012)). The daily activities that the ALJ highlighted tell us nothing about the nature and extent of the breaks plaintiff would need to deal with her Sjogren's. The first reason given by the ALJ gave for rejecting Dr. Lebeau's opinion as to plaintiff's need for additional breaks was not legitimate.

As for the second reason, that Dr. Lebeau did not opine as to how many additional breaks plaintiff would need, Dr. Lebeau testified that this was an issue to discuss with the

---

[31]Admin. Rec. at 42-43.

vocational expert.[32] But, the ALJ did not do so. Plaintiff's lawyer asked the vocational expert about additional breaks, but the ALJ did not.[33] Based on Dr. Lebeau's testimony, the ALJ should have developed the issue of plaintiff's need for additional breaks.

The ALJ erred in rejecting Dr. Lebeau's opinion that plaintiff would need additional breaks. This error was not harmless because if plaintiff does in fact require additional breaks, the ALJ did not include this limitation in plaintiff's RFC.

Plaintiff next argues that the Appeals Council erred as to the new evidence that she submitted on appeal. On November 3, 2017, plaintiff submitted Dr. Holmes' treatment notes from April 17-24, 2017.[34] Dr. Holmes stated that

> we are presuming that this is a small vessel disease. We will recommend starting her on Imdur and then titrating the dose. Hopefully, she will be able to tolerate and become used to any headaches related to that. I have told her that she should also carry nitroglycerin with her. We talked about the importance of exercise. I think more regular exercise will be excellent for her. . . . Should this not be associated with improvement, we could then add ranolazine to her program for the treatment of what we presume is small vessel disease.[35]

The Appeals Council noted that plaintiff "submitted medical records from the Mayo Clinic and Dr. Holmes, dated April 17, 2017 through April 24, 2107 (19 pages). We find this

---

[32]Admin. Rec. at 95.

[33]Admin. Rec. at 122.

[34]Admin. Rec. at 575.

[35]Admin. Rec. at 15.

evidence does not show a reasonable probability that it could change the outcome of the decision. We did not consider and exhibit this evidence."[36]

While the Appeals Council's statements are somewhat ambiguous, it appears that the Appeals Council did consider Dr. Holmes' treatment notes and determined that they would not change the outcome of this case. The Ninth Circuit has held "'that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.'" Decker v. Berryhill, 856 F.3d 659, 664 (9th Cir. 2017) (quoting Brewes v. Comm'r of Social Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012)).

Plaintiff argues that this additional evidence relating to her cardiac issues was likely to change the outcome of this case because it is evidence of an additional severe impairment that would likely have associated limitations. Thus, plaintiff argues that if the court considers this additional evidence, as it must, then at least a remand for further proceeding is necessary so that the ALJ can decide in the first instance what impact this new diagnosis might have on plaintiff's capacity to sustain full-time work.

Dr. Holmes' treatment notes were unlikely to change the outcome of this case, primarily because the ALJ considered plaintiff's atypical chest pain. The ALJ asked Dr. Lebeau if there would be any limitations associated with plaintiff's chest pain and Dr. Lebeau

---

[36]Admin. Rec. at 2.

testified that there would not be.[37] The Appeals Council did not err as to Dr. Holmes' treatment notes.

But because the ALJ erred as to Dr. Lebeau's opinion and failed to develop the record on the issue of how much work plaintiff would miss for medical and dental appointments, the court must decide whether to remand for an award of benefits or for further proceedings. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." Treichler v. Comm'r of Social Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a

---

[37]Admin. Rec. at 98-101.

whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

Here, a remand for further proceedings is appropriate because the record needs to be developed on the issue of much work plaintiff would miss due to doctor and dentist appointments as well as on the issue of whether she would need additional breaks during each work day, and if so, how many additional breaks.

## Conclusion

Based on the foregoing, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 10th day of January, 2019.

/s/ H. Russel Holland<br>
United States District Judge